CLERK'S OFFICE
A TRUE COPY
Feb 09, 2024

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❑ Original          ❑ Dupli

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with cellular telephone<br>number 262-844-9222, as described in<br>Attachment A. | )<br>)<br>)<br>)<br>)<br>) |

Case No.  24-M-329 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before    2-23-24    *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. Stephen C. Dries    .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of    06/07/2024    .

Date and time issued:    2-9-24. 9:45 am                    *Stephen C. Dries*
                                                                              *Judge's signature*

City and state:   Milwaukee, Wisconsin                    U.S. Magistrate Judge Stephen C. Dries
                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

## Property to Be Searched

1. Records and information associated with:

- the cellular device assigned call number 262-844-9222 (the "Target Cell Phone"), that is in the custody or control of AT&T Mobility (the "Service Provider"), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

2. Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the accounts listed in Attachment A:

a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 1, 2024, to present:

   i.  Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.  Local and long distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.  Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(C) all historical GPS or other precision location information associated with the account, including Per Call Measurement Data (PCMD), Range to Tower/Real-Time Tool (RTT) data, NELOS records, and Timing Advance Data (TrueCall)).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of **30 days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the

3

location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license), 18 U.S.C. § 922(g) (possessing a firearm as a convicted felon), 21 U.S.C. § 841(a) (distributing and possessing with intent to distribute a controlled substance), 21 U.S.C. § 846 (drug conspiracy), and 21 U.S.C. § 856 (maintaining a drug-involved premises), involving BODWAY, since January 1, 2024 through the present, including but not limited to:

(a) Location information associated with the target and co-conspirators, the places and buildings they utilize in furtherance of their crimes, and other preparatory steps taken in furtherance of the scheme;

(b) Evidence indicating how and when the accounts and devices were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the accounts and devices.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this warrant.

4



CLERK'S OFFICE
A TRUE COPY
Feb 09, 2024
SJDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with cellular telephone<br>number 262-844-9222, as described in Attachment A. | )<br>)<br>)<br>)<br>)<br>) |

Case No. **24-M-329 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(a)(1)(A) & 922(g), 21 USC 841(a), 846, & 856 | Possessing a firearm as a convicted felon, engaging in firearms business without a license, distributing and possessing with intent to distribute controlled substances, drug conspiracy, and maintaining drug-involved premises |

The application is based on these facts:

See Affidavit

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of _120_ days *(give exact ending date if more than 30 days:* _06/07/2024_ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

ATF SA Alex Erlein
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: __2-9-24__

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Alex Erlien, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 262-844-9222 (the "Target Cell Phone"), with listed subscriber Andrew BODWAY, whose service provider is AT&T Mobility ("Service Provider"), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.     Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.     I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") since September 26, 2018. I was previously employed as Police Officer for the City of Janesville, Wisconsin for approximately five and a half years, and prior to that, I was an Officer in the United States Navy. I have a bachelor's degree in philosophy from the University of Wisconsin—Madison. I have been involved in numerous investigations involving violations of firearms laws, drug trafficking, human trafficking, and drug possession, resulting in the arrest of numerous criminal defendants and the seizure of illegal firearms and illicit controlled substances.

5.     I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection.

6.     I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and firearms trafficking. In addition, I have participated in the execution of search warrants in which firearms, ammunition, and controlled substances were seized in violation of state and federal laws. I know from training and experience that those who commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, and I have knowledge of the use of money laundering to conceal ill-gotten gains.

7.     I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of

2

electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.     I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking.

9.     Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

10.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Andrew P. BODWAY (M/W, 07/08/1977) and other unidentified subjects have committed violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license), 18 U.S.C. § 922(g) (possessing a firearm as a convicted felon), 21 U.S.C. § 841(a) (distributing and possessing with intent to distribute a controlled substance), 21 U.S.C. § 846 (drug conspiracy), and 21 U.S.C. § 856 (maintaining a drug-involved premises).  There is also

3

probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

12.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### Background and Investigation Initiation

13.     Beginning on or around January 23, 2024, SA Erlien met with a Walworth County Sheriff's Office ("WCSO") Confidential Informant ("CI").[1]  During this meeting, the CI confirmed that he had previously purchased privately-manufactured firearms ("PMF"), including pistols, rifles, and two different pistol machinegun conversion devices (commonly called Glock switches), from Andrew P. BODWAY (M/W, 07/08/1977).  In total, the CI believed that he had purchased between 10 and 20 firearms from BODWAY. The CI had not purchased from BODWAY since May of 2023 but had recently ran into BODWAY at the McDonald's on Meadowbrook Road in Waukesha.  When the CI spoke to BODWAY, BODWAY advised the CI that he is still selling firearms.

---

[1] The CI has multiple previous convictions including for Possession of THC (2nd+ Offense), a class I felony, Wisconsin Statutes 961.41(3g)(e), 1st-Degree Recklessly Endangering Safety, a class F felony, Wisconsin Statutes 941.30(1), multiple convictions for Possession of THC, an unclassified misdemeanor, Wisconsin Statutes 961.41(3g)(e), and multiple convictions for Criminal Damage to Property [Modifiers: PTAC, as a Party to a Crime], a class A misdemeanor, Wisconsin Statutes 943.01(1). He is cooperating with law enforcement in consideration of pending charges. He has no other known relevant relationship to BODWAY except as a customer.

4

14.     BODWAY told the CI that he has a "brother" who has a lot of AR-15 "lowers" (also known as receivers) that can be fitted with parts to make several different calibers of AR-15 rifles.  BODWAY told the CI that he currently does not have a jig to cut his own AR-15 lowers, so he is purchasing them from his "brother," but once he receives that generic lower, he is able to order all the other components online to build any type of rifle the buyer would like. BODWAY advised the CI that if the CI is interested in purchasing firearms from him in the future, BODWAY is willing to sell the CI whatever the CI orders.  BODWAY also informed the CI that he has a large supply of marijuana and that he would sell the marijuana to him buy the pound or half pound.

15.     The CI agreed to make a controlled purchase of a firearm under ATF's direction, and to attempt to introduce BODWAY to an ATF undercover agent ("UC").

16.     On January 25, 2024, the CI contacted SA Erlien to advise him that he had spoken to BODWAY and that BODWAY told the CI that he would like the CI to "front" him $500 for any order that the CI placed on a firearm so that BODWAY could order the parts online. The CI told BODWAY that he did not want to front BODWAY any money and told BODWAY to use the money gained from the sale of the firearm BODWAY currently has, to order more in the future. The CI stated that he then told BODWAY that he would like BODWAY to order a .308 caliber AR-15 rifle for him.

17.     On January 27, 2024, the CI advised SA Erlien that BODWAY contacted the CI and told him that he was going to order the parts for the .308 rifle that the CI had requested. BODWAY then told the CI that it would be easier for him if he could have someone Cash-App him some money to place the order.  BODWAY also invited the CI to BODWAY's parents house at S37W27370 Sun Valley Trail, Waukesha WI 53189;  BODWAY told the CI that his parents are not at the residence all year and no one would be there when they ordered the parts.

5

18.     On January 29, 2024, SA Erlien spoke with the CI regarding his contacts with BODWAY.  The CI explained that on January 28, 2024, one day earlier, the CI met with BODWAY to talk more about ordering the .308 rifle.  During that meeting, BODWAY continued to request that the CI front him $500 for the order and the CI eventually provided BODWAY $500 as a front for the order of the .308 rifle. BODWAY also informed the CI that he would have an M4 rifle for sale for $750. BODWAY also agreed to meet another potential buyer (*i.e.,* the UC) through the CI, who the CI described as someone who had friends in California and who was looking for a connection to a firearms source of supply.

19.     Below are photographs of the CI's phone, displaying a text message conversation with BODWAY in which BODWAY explains the cost of the rifle orders to the CI, says that he wants to get his own jig to mill his own firearms, sends his address to the CI, and asks the CI to front him money for the firearm order.

  

20.     On January 30, 2024, the CI advised SA Erlien that BODWAY was willing to meet with the CI and the UC at his residence at S37W27370 Sun Valley Trail to sell the CI and the UC a half of a pound of marijuana and an M4 rifle. The CI also informed SA Erlien that BODWAY told the CI on January 29, 2024 that he had placed the order for the .308 rifle parts and that the

6

order was coming from Tennessee. BODWAY told the CI that he expected the order to be to his house in the next 3-10 business days. Below are photographs that the CI sent to SA Erlien capturing the CI's conversation with BODWAY.

 

21.     SA Erlien confirmed with the CI that all the above referenced communications between BODWAY and the CI were through the Target Cell Phone.

22.     SA Erlien ran a criminal background check on BODWAY and found that he is a convicted felon in the State of California and therefore is prohibited from possessing firearms. BODWAY's criminal history showed that he was convicted of two felonies in California, one for assault with a firearm on a person in 1998 and the other for possession of a narcotic in 2002. In both cases, BODWAY served prison time for more than a year. SA Erlien also checked law enforcement databases and found that BODWAY shows a home address of S37W27370 Sun Valley Trail, Waukesha WI.

7

**Controlled Buy—January 31, 2014**

23.     On January 31, 2024, the UC, accompanied by the CI, purchased one (1) privately manufactured firearm (PMF) and approximately 6.4 ounces of suspected marijuana from BODWAY outside in the driveway of the residence located at S37W27370 Sun Valley Trail, Waukesha, Wisconsin. During the course of the undercover meeting, the UC and the CI were equipped with audio-/video-recording equipment.

24.     After an operational briefing, at approximately 11:30 A.M., SA Erlien and the UC met with the CI at the operation's staging location. At this time, the CI was searched for contraband, and none was found. The UC was provided with an amount of ATF buy money (U.S. Currency) that would be utilized to purchase evidence from BODWAY. Prior to the controlled purchase, the CI advised SA Erlien and SA 6208 that the rifle would cost $750 and the marijuana would cost $500. During the entirety of the operation, the UC and the CI (hereinafter referred to as "the undercover personnel") were followed by a designated cover team.

25.     At approximately 12:18 P.M., the undercover personnel arrived at S37W27370 Sun Valley Trail, Waukesha, Wisconsin. The UC drove the UC vehicle into the driveway of the residence and parked a short distance from the attached garage door. Less than one minute later, the garage door began to open, which allowed the UC to observe BODWAY, who was carrying a black nylon rifle case and a white plastic grocery bag, exit the garage and approach the passenger side of the UC vehicle. Below is a photo of BODWAY at the passenger side of the UC vehicle while selling the UC suspected marijuana and a rifle.

8



26.     As BODWAY approached, the CI opened the door of the UC vehicle's front passenger door and allowed BODWAY to stand in the space between the open door and the front passenger seat (reference the above image).  BODWAY greeted the UC and the CI and placed the black rifle case as well as the white grocery bag (which contained a clear, resealable bag, containing a green, suspected marijuana) in the passenger compartment of the UC vehicle.

27.     The CI asked BODWAY if the soft nylon case came with the rifle as part of the sale. BODWAY responded, "I can't [sell the rifle case]. It's my brother's. You can bring it back to me [later] today." BODWAY then addressed the UC, echoing what he had just said to the CI: "I can't [sell the case]. It's too good of people. Too good of people, I can't do it." The CI told BODWAY that he and the UC would take the rifle case with them; however, the CI would return the case to BODWAY later that day.

28.     The UC confirmed with BODWAY that the price of the firearm and the marijuana would be a total of $1,250 and then provided BODWAY with the aforementioned amount in ATF buy money.

29.     After BODWAY sold the PMF rifle and suspected marijuana to the UC, the CI asked if BODWAY had any other firearms for sale. BODWAY advised that there was a KRISS Vector (make/model) firearm for sale but that he did not have it right now. BODWAY advised

9

that he would need money up front to go purchase the firearm in the City of Milwaukee and then he could bring it back to the UC and CI. The UC asked BODWAY if the KRISS Vector firearm was a pistol or rifle, and BODWAY said he believed it was a pistol. BODWAY then pulled out his cell phone from his pocket to review a photograph of the KRISS Vector firearm for sale, and he showed the photo to the UC and the CI. After the controlled buy, the CI informed SA Erlien that BODWAY had previously sent the photograph of the Kriss Vector firearm to the CI via text message from the Target Cell Phone.

30.     After seeing the threaded barrel on the KRISS Vector in the photograph, the UC asked if the firearm came with a silencer. BODWAY said he could obtain silencers through an associate of his; however, the individual who could provide BODWAY with silencers was not the same individual who currently possessed the KRISS Vector pistol. The UC declined to have BODWAY go get the KRISS Vector and instead they ended their contact at approximately 12:21 P. M.

31.     After the controlled purchase was over, the UC and the CI drove back to a predetermined location. While at the location, SA Erlien confirmed with the CI that all of the prior arrangements for the controlled purchase and on the way to the controlled purchase were done through the Target Cell Phone. Below are two photos of the CI's conversation with BODWAY through the Target Cell Phone.

10



32.     After SA Erlien debriefed with the CI and UC, he took custody of the PMF rifle and marijuana purchased by the UC.  SA Erlien weighed the suspected marijuana and found that it weighed .4 lbs.  SA Erlien examined the PMF rifle and found that it did not have any serial number on it or other manufacturer markings/identification.  SA Erlien then test fired the rifle three times to be submitted to NIBIN.  The rifle fired all three rounds as designed.  The rifle was tagged into evidence at the ATF Milwaukee Group 3 evidence vault under PROP-16223 and the marijuana was tagged into evidence at the ATF Milwaukee Group # drug vault under PROP-16226.  Below are photos taken of the evidence purchased:



33.     With this warrant, investigators seek historical location information associated with BODWAY's known cell phone number, as well as prospective location information. With this information, investigators anticipate being able to identify associates and locations of interest as they pertain to the criminal activities described herein.  In doing so, investigators anticipate being able to better understand from where BODWAY receives or purchases firearm components, with whom he associates, and where he conducts his business of assembling and selling firearms.

## TECHNICAL BACKGROUND

34.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

35.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone

12

numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

36.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

13

**Pen-Trap Data**

37.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**Subscriber Information**

38.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators.

14

39.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications of BODWAY, along with other unidentified subjects, is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether BODWAY and unidentified others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## CONCLUSION

40.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

41.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

42.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

15

government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

43.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for 120 days, until June 7, 2024. This investigation is expected to remain covert at least until then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize an ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

44.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with:

   - the cellular device assigned call number 262-844-9222 (the "Target Cell Phone"), that is in the custody or control of AT&T Mobility (the "Service Provider"), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

2. Target Cell Phone.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the accounts listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 1, 2024, to present:

   i.   Names (including subscriber names, user names, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(C) all historical GPS or other precision location information associated with the account, including Per Call Measurement Data (PCMD), Range to Tower/Real-Time Tool (RTT) data, NELOS records, and Timing Advance Data (TrueCall)).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of **30 days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the

3

location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license), 18 U.S.C. § 922(g) (possessing a firearm as a convicted felon), 21 U.S.C. § 841(a) (distributing and possessing with intent to distribute a controlled substance), 21 U.S.C. § 846 (drug conspiracy), and 21 U.S.C. § 856 (maintaining a drug-involved premises), involving BODWAY, since January 1, 2024 through the present, including but not limited to:

(a) Location information associated with the target and co-conspirators, the places and buildings they utilize in furtherance of their crimes, and other preparatory steps taken in furtherance of the scheme;

(b) Evidence indicating how and when the accounts and devices were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the accounts and devices.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this warrant.

4